UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**GRAND ISLE SHIPYARDS, INC.**          **CIVIL ACTION**

**VERSUS**                              **NO. 13-2496**

**BLACK ELK ENERGY, LLC, et al.**       **SECTION: "G"(5)**

## ORDER AND REASONS

Before the Court is Defendant Black Elk Energy, LLC's ("Black Elk") "Motion to Dismiss and to Compel Mediation and/or Arbitration."[1] After considering the complaint, the pending motion, the memorandum in support, the opposition, the record, and the applicable law, the Court will grant the pending motion.

## I. Background

### A. *Factual Background*

On November 16, 2012, Plaintiff Grand Isle Shipyards, Inc. ("GIS"), was working at the direction of Black Elk and/or its agents, contractors, or representatives on a production platform in the Gulf of Mexico located in West Delta Block 32, a location on the Outer Continental Shelf.[2] GIS alleges that defendants Wood Group USA, Inc. ("Wood Group") and Compass Engineering & Consultants, LLC ("Compass") were acting as Black Elk's agents, were responsible for safety on the platform, and were overseeing GIS's work.[3] The remaining defendant, Enviro Tech Systems, LLC ("Enviro") was allegedly also performing work on the platform on that day, but in other areas than

---

[1] Rec. Doc. 6.

[2] Rec. Doc. 1 at ¶ 7.

[3] *Id.* at ¶ 8.

GIS.[4] On that day, there was an explosion and fire that occurred on the platform, allegedly resulting in injuries to GIS employees as well as damage and loss to GIS equipment.[5]

*B. Procedural Background*

GIS filed the complaint in this matter on April 29, 2013, invoking this Court's federal question jurisdiction.[6] In GIS's first cause of action, it claims that all of the defendants' "combined negligence, fault, and/or strict liability," was the cause of the explosion, and seeks damages.[7] In GIS's second cause of action, it brings a claim for unpaid invoices under Louisiana Revised Statute § 9:2781. GIS claims that on December 30, 2008, GIS and Black Elk entered into a Master Service Agreement ("MSA") which governed their relationship; pursuant to that agreement, GIS claims that it is owed $233,334.82 for work it performed on the platform.[8] In GIS's third and final cause of action, it seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.[9] Specifically, GIS requests a declaratory judgment that Louisiana law should govern any dispute between GIS and Black Elk arising under the MSA.[10]

---

[4] *Id.* at ¶ 9.

[5] *Id.* at ¶ 10.

[6] *Id.* at ¶ 6.

[7] *Id.* at ¶ 11.

[8] *Id.* at ¶¶ 15-20.

[9] *Id.* at ¶ 22.

[10] *Id.* at ¶ 25.

On July 11, 2013, Black Elk filed the pending motion to dismiss, wherein it requests that the Court compel mediation and/or arbitration.[11] GIS filed an opposition on July 23, 2013.[12]

## II. Parties' Arguments

### A. Black Elk's Arguments in Support of the Motion to Dismiss

In support of the pending motion, Black Elk directs the Court to Section XXII of the MSA, which states:

> **XXII. DISPUTE RESOLUTION**
>
> All controversies, Claims and disputes arising under or relating to this Agreement, including tort claims, shall be first submitted to mediation and, if that is unsuccessful, then to binding arbitration under the procedures set forth in Exhibit D attached hereto and made a part hereof.[13]

Black Elk further contends that "Exhibit D" of the MSA sets forth the agreed upon parameters for the resolution of all disputes under the MSA.[14] Therefore, Black Elk contends that under the Federal Arbitration Act ("FAA") this Court must stay this lawsuit, order participation in mediation, and if unsuccessful, require the parties to participate in binding arbitration.[15]

Black Elk argues the Court's first inquiry must be whether the FAA applies to this matter. Relying on Supreme Court precedent, Black Elk avers that the FAA applies to all contracts within the reach of the Commerce Clause.[16] Black Elk contends that the MSA "undeniably affects interstate

---

[11] Rec. Doc. 6.

[12] Rec. Doc. 23.

[13] Rec. Doc. 6-1 at pp. 1-2 (citing MSA, Rec. Doc. 6-2).

[14] *Id.* at p. 2.

[15] *Id.*

[16] *Id.* at p. 3 (citing *Allied Bruce Terminix Co. Inc. v. Dobson*, 513 U.S. 265, 277 (1995)).

commence as Black Elk and Grand Isle [GIS] are citizens of different states who entered into a commercial contract."[17]

Next, Black Elk argues that this Court must determine if (1) a valid agreement to arbitrate exists and (2) whether the specific dispute falls within the scope of the agreement.[18] If a court answers both of these questions in the affirmative, Black Elk asserts that Section 4 of the FAA instructs a court to grant a motion to compel arbitration. In regard to the first condition, Black Elk submits that in the complaint GIS admits that the MSA is valid and enforceable, and therefore so is Section XXII of the MSA.[19] With regard to the second factor, Black Elk argues that the language in the MSA is broad because it states that "all controversies" shall be submitted for arbitration, and as such, this dispute falls within the ambit of Section XXII's agreement to arbitrate.[20] Therefore, Black Elk urges this Court to compel Grand Isle to participate in mediation/arbitration of the claims against it.[21]

### *B. GIS's Arguments in Opposition to the Motion to Dismiss*

In opposition to the pending motion, GIS claims that the MSA permits, but does not mandate arbitration.[22] Despite the language in Section XXII of the MSA stating that the all claims "shall be

---

[17] *Id.* at p. 4. (citing *Quick Print of New Orleans, Inc. v. Danka Office Imaging Co.*, No. 04-644, 2004 WL 1488656, at *2 (E.D. La June 30, 2004)).

[18] *Id.*

[19] *Id.*

[20] *Id.* at pp. 4-6.

[21] *Id.* at p. 6.

[22] Rec. Doc. 9 at p. 2.

first submitted to arbitration and, if unsuccessful then to binding arbitration," as instructed by "Exhibit D," GIS argues that Exhibit D "absolutely makes arbitration permissive," by stating:

> II. ARBITRATION
>
> > 1. <u>Initiation of Arbitration</u>
> >
> > If, after a good faith attempt to mediate, the parties are unable to resolve their controversies, claims, or disputes, then either party <u>may</u> initiate arbitration proceedings by filing in writing a notice of demand for arbitration to the other party and the American Arbitration Association.[23]

GIS argues that the use of "may" in Exhibit D renders the arbitration agreement in the MSA permissive, and a court will only compel arbitration when the parties have agreed to mandatory arbitration.[24] GIS also claims that the Fifth Circuit has held that similar language within a contract only created a permissive clause and gave no party a right to demand arbitration.[25]

Finally, GIS asserts that "from a judicial efficiency perspective, staying this matter pending arbitration risks inconsistent results."[26] GIS notes that both Compass and Wood Group have asserted counterclaims against GIS, asserting that they are entitled to indemnity based on the MSA between GIS and Black Elk, and that Wood Group has asserted a crossclaim against Black Elk as well seeking indemnity, and that these parties have never agreed to any type of arbitration, whether mandatory or permissive, and therefore these claims would proceed.[27] GIS also argues that even if the Court grants the pending motion, Black Elk will remain a defendant in this suit regarding the

---

[23] *Id.* at p. 3 (citing Rec. Doc. 6-1) (emphasis added by GIS).

[24] *Id.* at pp. 4-5 .

[25] *Id.* at p. 5 (citing *Retractable Techn., Inc. v. Abbot Labs., Inc.*, 281 F. App'x 275 (5th Cir. 2008) (per curiam) (unpublished).

[26] *Id.* at p. 6.

[27] *Id.*

5

claim asserted by Wood Group, and therefore "the granting of this motion does not eliminate a defendant, nor does it resolve in any way the claims before this Court, and may produce "inconsistent results."[28] However, GIS fails to cite any authority to suggest that these alleged "equitable" concerns should be taken into account.

### III. Standard on a Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[29] "A motion to dismiss on the basis of the pleadings alone should rarely be granted."[30] Although a court must accept the factual allegations in the pleadings as true, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.[31] "Determining whether a complaint states a plausible claim for relief will [] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[32] "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[33] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the

---

[28] *Id.* at pp. 6-7.

[29] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[30] *Madison* v. *Purdy*, 410 F.2d 99, 100 (5th Cir. 1969).

[31] *Doe*, 528 F.3d at 418 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[33] *Drs. Bethea, Moustoukas & Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 n. 7 (5th Cir. 2004).

pleader is entitled to relief."[34] Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.[35] While in considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, the Fifth Circuit has instructed that consideration of documents attached to the motion to dismiss may also be considered when they are referred to in the complaint and are central to the plaintiff's claim.[36]

### IV. Law and Analysis

The sole question before the Court upon the pending motion is whether the FAA mandates the arbitration of the claims here by GIS against Black Elk. The Court will begin by outlining the appropriate standard under the FAA, and then will apply it to the specific provisions here.

*A. Determining Whether a Dispute Must be Arbitrated under the FAA*

The Fifth Circuit has recognized that "[a]rbitration is favored in the law."[37] Moreover, there is a "liberal Federal Policy favoring arbitration agreements."[38] Logically, when faced with a motion to compel arbitration under the FAA, a court must first determine whether the FAA is applicable. The FAA provides, in pertinent part, that a:

> written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of

---

[34] *Ashcroft*, 556 U.S. at 678-79 (2009) (internal quotation marks omitted).

[35] *Twombly*, 550 U.S. at 555-56.

[36] *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012); *see also Collins*, 224 F.3d at 498-99 (dictum);

[37] *Gregson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

[38] *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91 (2000).

>such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[39]

The Supreme Court has held that the FAA governs all contracts that are within the reach of the Commerce Clause, and has instructed courts to interpret the phrase "involving commerce" broadly, to be functionally equivalent to "affecting."[40]

If the contract between the parties is governed by the FAA, the next step is to determine whether the parties actually agreed to arbitrate. This is a two-step process where the court considers (1) whether there is a valid arbitration agreement between the parties; and (2) whether the dispute in question falls within the scope of the agreement.[41] In determining whether a dispute falls within the scope of the arbitration agreement, ambiguities are resolved in favor of arbitration.[42] If the two conditions above are met, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement."[43] However, as GIS has noted, some courts have recognized that a "court will compel arbitration only where the parties have agreed to mandatory arbitration."[44]

## B. Analysis

---

[39] 9 U.S.C. § 2.

[40] *See Dobson*, 513 U.S. at 277.

[41] *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1072 (5th Cir. 2002).

[42] *Id.* at 1073.

[43] 9 U.S.C. § 4.

[44] *SMG Swedish Mach. Group, Inc. v. Swedish Mach Group, Inc.*, No. 90-6081, 1991 WL 10622, at *2 (N.D. Ill. Jan. 22, 1991) (citing cases); *Retractable Tech., Inc.*, 281 F. App'x at 275

As highlighted in the parties arguments, there are two relevant provisions here regrading whether arbitration is necessary as to the claims between GIS and Black Elk. First, Section XXII of the MSA states:

**XXII. DISPUTE RESOLUTION**

All controversies, claims and disputes arising under or relating to this Agreement, including tort claims, shall be first submitted to mediation and, if that is unsuccessful, then to binding arbitration under the procedures set forth in Exhibit D attached hereto and made a part hereof.[45]

The referenced "Exhibit D" provides, in pertinent part:

II. ARBITRATION

1. Initiation of Arbitration

If, after a good faith attempt to mediate, the parties are unable to resolve their controversies, claims, or disputes, then either party may initiate arbitration proceedings by filing in writing a notice of demand for arbitration to the other party and the American Arbitration Association.[46]

To begin the analysis here, the Court must first determine if the FAA is applicable. The Court notes that in opposition to the pending motion, GIS has not disputed that the FAA controls here or that the dispute "involves" or "affects" interstate commerce. Considering the Supreme Court's broad interpretation of the FAA's reach, and the fact that GIS and Black Elk are citizens of different states, the Court finds that the FAA governs the disputes between them asserted here.[47]

Next, this Court must determine if the parties agreed to arbitrate. The first step in this inquiry is to determine whether there is a valid arbitration agreement between the parties. Here, there has

---

[45] MSA, Rec. Doc. 6-2 at p. 11.

[46] *Id.* at p. 22.

[47] *See Dobson*, 513 U.S. at 277; *see also Quick Print of New Orleans, Inc.*, 2004 WL 1488656, at *2 (finding that the FAA applied because the parties who entered into the contract were citizens of different states).

been no allegation that the MSA is not valid, and therefore, the Court finds that this condition is satisfied. Second, the Court must resolve whether the dispute falls within the scope of the agreement. Section XXII broadly states that "[a]ll controversies, claims and disputes arising under or relating to this Agreement, including tort claims shall be first submitted to mediation and, if that is unsuccessful, then to binding arbitration." The Fifth Circuit has specifically held "that arbitration clauses containing the 'any dispute' language, such as the one presently before us, are of the broad type."[48]

However, in opposition, GIS has argued that the parties have not agreed to mandatory arbitration, and then relies on out-of-circuit precedent to state that arbitration can only be compelled when there is a mandatory arbitration clause. Specifically, GIS argues that Exhibit D's use of "may" renders the arbitration clause permissive, instead of mandatory.[49] The Court finds this argument unavailing for several reasons.

First, Section XXII of the MSA expressly requires the arbitration of any and all disputes arising under the MSA: "All controversies, claims and disputes arising under or relating to this Agreement, including tort claims, ***shall*** be first submitted to mediation and, if that is unsuccessful, then to binding arbitration under the procedures set forth in Exhibit D."[50] However, GIS argues the Exhibit D's language that "[i]f, after a good faith attempt to mediate, the parties are unable to resolve their controversies, claims, or disputes, then either party ***may*** initiate arbitration proceedings by

---

[48] *In the Matter of Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993).

[49] *See* Rec. Doc. 9 at 2-5.

[50] Rec. Doc. 6-2 at p. 11. While not argued by GIS, the Court notes that other sections of this Court have arbitration agreements are still binding even if the clause first requires the parties to seek mediation. *See Hill v. Hornbeck Offshore Servs., Inc.*, 799 F.Supp. 2d 658 (E.D. La. 2011); *Quick Print of New Orleans, Inc.*, 2004 WL 1488656.

filing in writing a notice of demand for arbitration to the other party and the American Arbitration Association," somehow nullifies Section XXII's obligatory language and renders it inoperable.

GIS has employed a strained and implausible reading of these contractual provisions. Where a contract is unambiguous, the interpretation of the contract becomes a matter of law.[51] "Each provision of a contract must be read in light of others so as to give each the meaning reflected by the contract as a whole."[52] Further, as Section XXII references Exhibit D, there is no doubt that the two provisions were intended to be read together and in a manner that gives effect to both provisions. Therefore, it would be unreasonable to find that Section XXII's obligatory language that all disputes "shall" proceed to mediation and then, if unsuccessful, to binding arbitration, is instantly negated by Section XXII's subsequent reference to Exhibit D, which employs the permissive phrase "may." As such, when considering Section XXII's language and reading Exhibit D in context, it is clear that GIS's proposed interpretation in incorrect. Again, Exhibit D states that if after good faith negotiations, a resolution has not been met, "then either party may initiate arbitration proceedings by filing in writing a notice of demand for arbitration to the other party and the American Arbitration Association." When reading this provision in light of Section XXII, it is clear that the permissive "may" in Exhibit D refers to the fact that either party can initiate arbitration proceedings, not that submitting the dispute to arbitration is optional or permissive.

The one case GIS cites in support of its proposition that the MSA contains a permissive arbitration clause is *Retractable Technologies, Inc. v. Abbot Laboratories, Inc.*,[53] an unpublished

---

[51] *Strachan Shipping Co. c. Dresser Indus., Inc.*, 701 F.2d 483, 486 (5th Cir. 1983).

[52] *Computalog U.S.A., Inc. v. Mallard Bay Drilling, Inc.*, 21 F.Supp. 2d 620, 624 (E.D. La. 1998) (citing *Aw. Eng'g Co. v. Cajun Elec. Power Co-op, Inc.*, 915 F.2d 972 (5th Cir. 1990)).

[53] 281 F. App'x 275.

11

Fifth Circuit case that is not binding precedent.[54] Moreover, *Retractable Technologies, Inc.* is distinguishable from this matter. There, the provision at issue stated:

> Alternative Dispute Resolution
>
> The Parties agree that any dispute that arises in connection with this Agreement, *shall* first be presented to the respective presidents of Manufacturer and Hospital Products Division of Marketer, or their designees for resolution. If no resolution is reached, then such a dispute *may* be resolved by alternative dispute resolution in the manner described in Exhibit 12.2.[55]

The Fifth Circuit found that this clause did not mandate arbitration, reasoning:

> Our affirmance is based on a matter of straightforward contract interpretation. The contract at issue requires that any dispute between the parties "shall" first be presented to the presidents of the respective parties, or their designees. If the parties fail to resolve the dispute on this level, the contract provides that the dispute "may" be resolved by arbitration "in the manner described" by an attached document, Exhibit 12.2. This reference in the contract to arbitration and to the an attached exhibit relates to the dispute itself and gives no right to any party to demand or "initiate" arbitration. Instead, the contractual provision referencing the exhibit allows arbitration only by mutual agreement, that is, it takes both parties to agree to arbitration. By the use of the word "may," the parties preserved other options to resolve disputes, including litigation. When, however, the parties mutually agree to arbitration, as is permitted by the contract and its use of the word "may," Exhibit 12.2 becomes applicable. Nothing in Exhibit 12.2 changes the permissive language of the contract provision. Exhibit 12.2 is only denominated "Alternative Dispute Resolution"; it is not denominated an "Agreement to Arbitrate" nor does it contain any suggestion, by word or words, that indicates that arbitration is mandatory absent mutual agreement. Exhibit 12.2 basically provides a lengthy list of arbitration procedures and the rights of the parties along with a prefatory statement that either party, after preliminary discussions have failed, "may" initiate arbitration. Thus, Exhibit 12.2 vests an individual right in each party to initiate the process, once mutually agreed to.
>
> Given the structure outlined above, it is evident that the contract does not mandate the parties to resolve their disputes by arbitration; there is no agreement reflected anywhere in the contract to submit disputes to binding arbitration. The section of the

---

[54] *See* 5th Cir. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case.").

[55] *See* Rec. Doc. 9-2 at ¶ 30 (district court opinion which was affirmed by the Fifth Circuit) (emphasis added).

contract itself discussing dispute resolution clearly indicates that arbitration is only a permissive manner to resolve disputes because the parties "may" rather than "shall" have their disputes resolved by this procedure.[56]

Unlike in *Retractable Technologies Inc.*, where the contract stated that the parties "may" resolve the dispute by "alternative dispute resolution," which is broad and encompasses more than arbitration, here, in Section XXII, the MSA states that "[a]ll controversies, claims and disputes arising under or relating to this Agreement, including tort claims, *shall* be first submitted to mediation and, if that is unsuccessful, then to binding arbitration." Therefore, in this matter there is an express provision mandating arbitration.

As a final argument in an attempt to persuade this Court to deny the pending motion, GIS has argued that because this action includes other parties, who also have claims, and who are not parties to the MSA, it would not be in the interest of "judicial efficiency" to grant the pending motion, and could produce in "inconsistent results."[57] However, as noted earlier, GIS has cited no authority to support that this is a valid concern that could override the FAA. In fact, the United States Supreme Court and the Fifth Circuit have expressly rejected such arguments and concerns:

> [T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums. Accordingly, we reverse the decision not to compel arbitration.
> ...
> By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would

---

[56] *Retractable Tech. Inc.*, 281 F. App'x at 275-76 (emphasis added).

[57] Rec. Doc. 9 at pp. 6-7.

13

conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.[58]

Moreover, "[u]nder the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."[59] This binding authority forecloses GIS's argument. Therefore, the Court will grant the pending motion, and order GIS and Black Elk to submit the disputes asserted here to mediation and then binding arbitration, if mediation does not resolve the claims, as required by the MSA and the FAA.

## V. Conclusion

For the reasons stated above, the Court finds that a mandatory arbitration clause exists between GIS and Black Elk regarding the claims asserted in this action. Therefore, the Court will grant the pending motion, compel GIS and Black Elk, pursuant to the MSA, to pursue mediation, and then, if that is unsuccessful, to binding arbitration as provided for by the MSA. Accordingly,

**IT IS HEREBY ORDERED** that Black Elk's "Motion to Dismiss and to Compel Mediation and/or Arbitration"[60] is **GRANTED** and GIS's claims against Black Elk are **DISMISSED**;

---

[58] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985) (emphasis in original); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co., (Pemex)*, 767 F.2d 1140, 1147 (5th Cir. 1985) (citing *Dean Witter Reynolds, Inc.*, 470 U.S. at 217-18).

[59] *Moses H. Cone Mem Hosp.*, 460 U.S. at 20.

[60] Rec. Doc. 6.

**IT IS FURTHER ORDERED** that GIS and Black Elk first attempt to resolve their claims through mediation, and if that is unsuccessful, then through binding arbitration, pursuant to and in accordance with the FAA and MSA, specifically Section XXII and Exhibit D.

**NEW ORLEANS, LOUISIANA**, this  1st   day of August, 2013.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**